**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2977
_____

TRINA R. GUMBS,
                              Appellant

v.

STATE OF DELAWARE DEPARTMENT OF LABOR
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-15-cv-00190)
District Judge: Honorable Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 12, 2018
_____

Before:  CHAGARES, VANASKIE, *Circuit Judges*, and BOLTON, *District Judge*[1]

(Filed: August 23, 2018)
_____

OPINION[*]
_____

---

[1] The Honorable Susan R. Bolton, Senior District Judge, United States District Court for the District of Arizona, sitting by designation.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellant Trina Gumbs appeals the District Court's August 11, 2017, Order granting summary judgment in favor of Defendant Delaware Department of Labor ("DDOL") on her claim brought under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). For the reasons that follow, we will affirm the District Court's Order.

**I.**

In 1996, Trina Gumbs began her career with the DDOL, Office of Anti-Discrimination ("OAD"), as an Administrative Assistant to the Director of Industrial Affairs. She was soon promoted to Labor Law Enforcement Officer I, and then to Labor Law Enforcement Officer II. In 2006, she was promoted to Labor Law Enforcement Supervisor ("LLES"), the position she held when she left the office in 2015.

In December 2011, the OAD's Regulatory Specialist position became vacant, and Gumbs was temporarily promoted to the position with an increase in pay.[2] Three months later, the OAD posted a vacancy announcement to permanently fill the Regulatory Specialist position. The posting listed two preferred qualifications: "1. Experience in resolving employment and/or discrimination complaints[;] [and] 2. Possession of a Juris Doctorate." (JA 126.)

Gumbs and four other applicants were interviewed for the position, and the office ultimately selected Daniel McGannon, a lawyer with previous experience in employment discrimination. Following McGannon's hiring in June 2012, Gumbs returned to her

---

[2] The parties also refer to this position as "Administrator," but we will adhere to "Regulatory Specialist" for consistency.

position as an LLES—a position subordinate to the Regulatory Specialist—and her pay was reduced accordingly. Since Gumbs had previously served as acting Regulatory Specialist and was knowledgeable about the office, she helped McGannon transition into the role.

Dissatisfied that she was not appointed Regulatory Specialist and that she was not receiving the compensation commensurate to that position, even though she believed she was performing the essential duties of that position, Gumbs filed administrative charges of discrimination. After receiving her Notice of the Right to File Suit from the Equal Employment Opportunity Commission ("EEOC"), Gumbs filed an action in the Sussex County Superior Court of the State of Delaware, challenging both the failure to promote her to Regulatory Specialist and the failure to pay her at the rate commensurate to that position. She later filed an action in the United States District Court for the District of Delaware against the DDOL for alleged violations of the EPA, seeking unpaid wages, unpaid overtime compensation, and benefits.[3] She argued that she and McGannon were paid unequally for equal work because, after she returned to her former position, "she continued performing the duties of OAD Regulatory Specialist," such as:

> continuing: to represent the OAD in the Fair Employment Practices Agency ("FEPA") Program, to act as Contract Compliance Officer, to submit signed monthly reports to the EEOC for reconciliation and payment purposes, to represent OAD during the Substantial Weight Review process, and to generate monthly statistics and charts for OAD using the electronic case management system.

---

[3] Gumbs later dismissed her EPA claim in the state court action. The failure to promote claim is not part of these proceedings.

3

(JA 27.)  Gumbs further argued that, even after her return to LLES, her job "required the same skill, effort, and responsibility under similar working conditions in the same establishment" and that, "in practice," she "overs[aw] and perform[ed] the work of McGannon."  (*Id.* at 28.)

The DDOL filed a motion for summary judgment, which was submitted to a Magistrate Judge for a Report and Recommendation.  The Magistrate Judge recommended that summary judgment be granted because, "[a]lthough [Gumbs] performed some of McGannon's duties, her job was not substantially equal because she did not have equal *responsibility*."  (*Id.* at 8) (emphasis in original).  Gumbs objected to the Report and Recommendation on two grounds: first, that the Magistrate Judge reached her conclusion without conducting a fact-intensive evaluation of job duties and responsibilities, and second, that McGannon's "additional supervisory tasks" were not unequal "responsibiliti[es]" for purposes of her claim.  (*Id.* at 15.)

In a Memorandum Opinion, the District Court agreed with the Magistrate Judge's recommendation that Gumbs failed to establish her *prima facie* case, as the actual responsibilities of McGannon's and Gumbs's respective positions were not equal.  The District Court found that, once Gumbs returned to her LLES position, "all the Regulatory Specialist position accountability was passed to McGannon," who had different core duties than Gumbs.  (*Id.*)  The District Court further found that, while McGannon may have "delegated some tasks to [Gumbs]," "[Gumbs] and her subordinates answered to McGannon . . . ."  (*Id.* at 15-16.)  The District Court thus overruled Gumbs's objections

4

and adopted the Report and Recommendation, granting summary judgment in favor of the DDOL.  Gumbs timely appealed.

## II.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment *de novo*.  *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).

## III.

The EPA prohibits an employer from paying unequal wages to male and female employees for equal work.  *See* 29 U.S.C. § 206(d)(1).  Claims brought under the EPA follow a two-part, burden-shifting test: "[t]he plaintiff must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions."  *Stanziale*, 200 F.3d at 107.  If the plaintiff does so, the burden shifts to her employer to "demonstrate the applicability of one of the four affirmative defenses specified in the [EPA]."[4]  *EEOC v. Del. Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989).  The District Court found that the evidence was insufficient to support a finding that Gumbs could establish a prima facie case.  Accordingly, the District Court did not address the statutory affirmative defenses.

---

[4] The four defenses concern employer payment decisions that are made "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . ."  *Id.* § 206(d)(1).

On appeal, Gumbs argues that she was paid less for work that both she and McGannon performed. She argues that she "retained the management of the office with McGannon because he lacked the experience to run the office independently." (Appellant's Br. at 1.) She further argues that she considered herself "Co-Reg[ulatory] Specialist." (*Id.* at 14.)

To determine whether two jobs are "equal" for purposes of the EPA, "[t]he crucial finding . . . is whether the jobs to be compared have a 'common core' of tasks, *i.e.,* whether a significant portion of the two jobs is identical." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985). "The inquiry then turns to whether the differing or additional tasks make the work substantially different." *Id.* "Equal means substantially equal and '[a]ny other interpretation would destroy the remedial purposes of the [EPA].'" *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 658 (W.D. Pa. 2009) (quoting *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970)).

The District Court concluded that Gumbs could not establish a prima facie case because McGannon's job responsibilities were substantially greater than hers. We agree with this assessment.

For purposes of the EPA, "[r]esponsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a). Gumbs, in her capacity as an LLES, was responsible for "planning, assigning, reviewing, and evaluati[ng] the work of [her] subordinates; reviewing investigations; providing subject matter expertise to investigators; review[ing] all final determination recommendations from investigations;

6

provid[ing] a final determination recommendation to [the Regulatory Specialist]; [and] ensur[ing] case inventory [was] properly maintained and records [were] accurate." (JA 32.) In contrast, the responsibilities of the Regulatory Specialist position included hiring new employees, disciplinary decisions, "signing off on leave requests, . . . overseeing the mediation program," responding to Freedom of Information Act ("FOIA") requests, handling constituent contacts and community outreach, disciplining employees, and "the overall operation of the unit." (JA 66.) McGannon answered directly to the Secretary of Labor, and, in turn, Gumbs answered directly to McGannon. McGannon conducted performance reviews of Gumbs's work, and, on one occasion, had to inform Gumbs that she was overstepping her bounds when she signed overtime requests for employees.

As the DDOL correctly notes, the record contains no evidence showing that, after McGannon arrived, Gumbs performed a majority of Regulatory Specialist tasks, such as handling FOIA requests and conducting employee performance evaluations. While Gumbs did assist McGannon at times, for instance, by discussing discipline for subordinate employees and serving once on a hiring panel, McGannon had the final say. Gumbs's characterization that her arrangement with McGannon was akin to job-sharing is thus unsupported by the record. Despite Gumbs's role in helping McGannon transition into the Regulatory Specialist position, she did not possess equal responsibility and accountability once she returned to the LLES position. As a result, the OAD was not required to pay her the same amount as McGannon.

**IV.**

Accordingly, we will affirm the Order of the District Court entered on August 11, 2017.